# Beatty, Appellant, *v.* Firestone Tire & Rubber Co.

*Negligence—Automobile collision—Injury to third person—Liability of owner—Use of machine by employee—Defective brakes—Proximate cause.*

1. The owner of an automobile is not liable for damages caused by a collision due to the negligence of his employee while the employee was using the machine for a purpose of his own, whether the owner knew that the car was being so used or not.

2. The mere fact that an automobile was dangerous by reason of defective brakes, does not render the owner liable for damages caused by a collision while the employee was using the machine for a purpose of his own, since the proximate cause of the accident was the use of the car by the employee for his own purpose and not the condition of the brakes.

Argued Oct. 19, 1918.  Appeal, No. 124, Oct. T., 1918, by plaintiffs, from judgment of C. P. Allegheny Co., Jan. T., 1917, No. 542, on verdict for defendant in the case of Edward Beatty and Irene Beatty, his wife, Appellants, v. Firestone Tire and Rubber Company, a corporation.  Before BROWN, C. J., FRAZER, WALLING, SIMPSON and FOX, JJ.  Affirmed.

Action in trespass by husband and wife to recover damages for personal injuries sustained in a collision with an automobile owned by defendant and driven by defendant's employee.  Before REID, J.

The negligence alleged, inter alia, was the defective condition of the automobile and the high speed at which it was driven.

The court gave binding instructions for the defendant.

A motion for a new trial was refused for reasons set forth in an opinion by REID, J., as follows:

This is an action of trespass brought to recover damages for injuries sustained by plaintiffs resulting from a collision between an automobile in which they were

passengers and a Ford truck belonging to the defendant and driven by one of its employees.

Upon the conclusion of the trial, the uncontradicted evidence establishing the fact that the accident was due to the negligence of the driver of the truck while engaged upon a personal expedition of his own, outside of and in no manner connected with his master's business, the court gave binding instructions for the defendant.

Plaintiffs' counsel moved for a new trial assigning as error the action of the court in directing a verdict for defendant and we are now to consider that motion.

The essential facts, which were undisputed, were in substance as follows:

Dunlap, who was driving the Ford truck at the time of the accident, was an employee of defendant. In the afternoon of the day the accident occurred he was sent from the defendant's storeroom in Baum boulevard near Beatty street, East End, Pittsburgh, to convey some baggage belonging to defendant's salesmen to the Monongahela House in "down-town" Pittsburgh, using for that purpose the Ford delivery truck owned by defendant.

Upon the city-bound journey this truck was driven by Thomas, foreman of the tire-shop in which Dunlap was employed and his immediate superior. Thomas, however had no authority to lend defendant's cars to an employee or any one whomsoever.

Upon the return trip to East Liberty from the Monongahela House Dunlap drove the truck and he says that he told Thomas that he wished to stop at his (Dunlap's) home for supper, and then go to Homewood, a district lying to the east of the East End, for the purpose of canceling an engagement with a young woman, and he also says that Thomas gave him permission so to do. Thomas admits giving him the permission to stop for his supper before returning the car to the garage, but denies that he was informed of, or assented to, the Homewood trip. He says that he told Dunlap that he would wait for him, his explanation being that he wished to see the car put away

for the night. Dunlap suggests that he was to report at
the garage for further duty, but there was no evidence of
any work awaiting him there. On the contrary, he says
that when he left the Monongahela House he knew he was
not going back to work, but that he would be late getting
back to East Liberty.

He left the Monongahela House traveling east on the
Bigelow and Baum boulevard to St. Clair street, a point
very near defendant's place of business, and thence to
Mignonette street, two blocks distant from Baum boule-
vard and St. Clair street, where he had supper at his
home.

About 7:30 p. m. he left there driving the defendant's
truck and stopped at the corner of Euclid and Mignon-
ette streets to take on a boy friend. He then proceeded
to a skating rink at the corner of Broad street and Lari-
mer avenue, where he met three other young men, whom
he took on, thus making four passengers, all personal
friends of Dunlap's, and none of them in any way em-
ployed by or connected with the defendant. With two of
these friends seated beside him and the others standing,
one on each side of the car on the running board, Dun-
lap drove eastwardly along Larimer avenue, going, as he
had previously been doing, in a direction opposite and
away from the direction of defendant's garage. He was
driving at a high and dangerous rate of speed and just
before the accident had turned out of the right-hand
driveway into the left side of the street to pass a car or a
wagon, thus bringing his truck on to the wrong side of
the street and to the corner of Meadow street and Lari-
mer avenue, where he crashed into the taxicab in which
the plaintiffs were seated, and which just then emerged
from Meadow street.

Dunlap attributes the accident to the failure of the
brakes on the truck to respond properly when he saw the
taxicab and tried to stop.

By actual measurement the collision occurred 4,930
feet from the corner of Euclid and Mignonette streets;

and Dunlap's intended destination, Beecher street, Homewood, was about 6,800 feet still further east from the point of collision.

If Thomas did consent to Dunlap's using the car to go out to Homewood on a personal matter, it amounted to no more than the owner's lending the car,—even if it be conceded that Thomas had the right thus to dispose of his employer's property.

It is, therefore, clear, under the authority of Scheel v. Shaw, 252 Pa. 451, that the chauffeur Dunlap was not upon his master's business at the time the accident happened. The case cited at p. 461, explicitly decides that where the driver was employing the master's car for an unusual purpose, the master was not liable merely because he had given the servant permission to do so. Dunlap was upon an expedition of his own, for his own purposes entirely, and altogether disconnected from any service or undertaking for his employer. He was going in a direction away from his place of employment and duty, with companions of his own choosing, who were enjoying a pleasure ride with him. Under these circumstances, the court properly instructed the jury to find for the defendant.

The plaintiffs failed to meet the measure of proof required before they could be permitted to recover. Under the authorities, they were required to prove not only that defendant was the owner of the car and that the driver was its servant, but also that he was at the time of the accident engaged in the performance of his duties as such servant: Scheel v. Shaw, 252 Pa. 451; Lotz v. Hanlon, 217 Pa. 339; Curran v. Lorch, 243 Pa. 247; Solomon v. Com. Trust Co., 256 Pa. 55.

We have not overlooked the propositions in support of the motion for new trial urged in the brief of plaintiffs' counsel. These are:

(1) That the primary object of the trip was for the benefit of the master and therefore a deviation therefrom did not constitute a defense in an action brought

to recover for an accident occurring during such deviation.

(2) That the primary purpose of the trip was for the master's benefit and therefore a deviation for the chauffeur's purpose, with the master's permission, did not constitute a defense; and

(3) That where the master lends the servant an automobile knowing that it is dangerous by reason of defective brakes, the former is liable for injuries to third persons resulting from such defective condition.

The first and second of these propositions are without merit in view of the fact that there is no evidence to warrant a jury in determining that the primary object of the trip was for the master's benefit or at his direction or request.

The remaining proposition is untenable as involving the recognition of a measure of care and responsibility not warranted by the facts of the case.

If the chauffeur was upon a trip for his own convenience or pleasure, whether he was using the car with or without the master's permission, the measure of the master's liability must be determined solely under the authorities cited and others to the same effect. The proximate cause of the accident was the use of the car by the chauffeur for his own purpose,—not the condition of the brakes, even were they defective.

The motion for a new trial is refused.

Plaintiffs appealed.


*Error assigned* was the direction of a verdict for defendant.


*Thomas L. Morris,* with him *L. K. & S. G. Porter, Louis V. Barach,* for appellants.—Where the primary purpose of the trip is for the master's benefit, a deviation therefrom for the benefit of the servant with the master's knowledge, will not relieve the master from injuries sustained by a third party during the deviation: Witte v.

Mitchell-Lewis Motor Co., 244 Pa. 172; Blaker v. Philadelphia Electric Co., 60 Pa. Superior Ct. 56.

*Richard W. Martin,* with him *Beatty, McGee & Martin,* for appellee.—The rule is well settled that the plaintiff in an action to recover damages for personal injuries caused by the negligence of the driver of an automobile must prove not only that the defendant was the owner of the car and that the driver was his servant, but must also show that he was at the time of the accident engaged in the performance of his duties and acting within the scope of his employment: Lotz v. Hanlon, 217 Pa. 339; Solomon v. Com. Trust Co., 256 Pa. 55; Blaker v. Philadelphia Elec. Co., 60 Pa. Superior Ct. 56.

Even though the foreman had authority to lend the car to Dunlap, the owner is not liable for an act done by the bailee thereof for his own purposes and not within the scope of his employment: Scheel v. Shaw, 252 Pa. 451.

The alleged defective condition of the brakes was not the proximate cause of the accident.

PER CURIAM, January 4, 1919:

Under the undisputed facts in this case, set forth in the opinion of the learned court below denying plaintiffs' motion for a new trial, Dunlap, a chauffeur of the defendant company, was clearly not upon his master's business, but on business or pleasure purely of his own, when the truck he was driving collided with the automobile in which the appellants were passengers, and the judgment is, therefore, affirmed.